UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| AUTISM HOME SERVICES, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 2:22-CV-316-PPS-JEM |
| THE PIECE THAT FITS DAYCARE AND ABA THERAPY, INC. and KHIANA BOONE, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Khiana Boone, a board-certified assistant behavioral analyst, worked for Autism Home Services, LLC until July 2022, when she took a new position at The Piece That Fits Daycare and ABA Therapy, Inc. In October 2022, Autism Home filed this action claiming that Boone violated the terms of her written employment agreement, which includes non-compete, non-solicitation, and confidentiality provisions. Autism Home seeks compensatory and injunctive relief against Boone for breach of contract and theft of trade secrets, and against The Piece That Fits for tortious interference with Boone's contract. [DE 1.]

Boone now seeks summary judgment on Autism Home's claims, asserting that there is no evidence that she solicited any of its clients or misappropriated Autism Home's so-called "trade secrets," and there is no evidence that her alleged actions caused Autism Home any damage. [DE 54; *see* DE 55; DE 56.] Autism Home filed an

opposition to the motion, which it has improperly combined with a cross motion for summary judgment on its claims against Boone.[1] [DE 61; *see* DE 62; DE 63.]

Because Boone has met her burden to demonstrate the absence of a triable dispute as to essential elements of Autism Home's claims for breach of her written employment contract and misappropriation of its trade secrets, she is entitled to judgment on the claims and will be dismissed from this case. As for The Piece That Fits, it did not file any dispositive motions, and the deadline to do so has passed. At a hearing earlier this year, I was told that the company is "no longer conducting business," but has yet to "file[] the proper paperwork to dissolve" under state law. [DE 58.] With Boone dismissed from the case, Autism Home will need to decide whether moving forward against a defunct entity is at all sensible. But for now, the matter will remain set for trial in August, as originally scheduled. [DE 57.]

## Undisputed Facts

Autism Home, a company in Calumet City, Illinois, is a provider of applied behavior analysis therapy ("ABA therapy") to children with autism in Illinois and Northwest Indiana. [*See* DE 20 at 4.] ABA therapy services are overseen by board-certified behavior analysts ("BCBAs") and board-certified assistant behavioral analysts

---

[1] I say "improperly" because Autism Home's filing runs afoul of this Court's Local Rules applicable to summary judgment practice. *See* N.D. Ind. L.R. 56-1. The Local Rule, like Federal Rule 56(c), does not contemplate the filing of a cross motion for summary judgment *combined with* a brief in opposition to an adversary's motion for summary judgment. These should be separate filings to avoid muddying the record. The Local Rule also requires specific features for summary judgment filings that Autism Home has simply ignored. While I have discretion to strike pleadings from the record to the extent they do not comply with this Court's Local Rules, this is a straightforward case with a threadbare record. It's more efficient to overlook the procedural missteps and take up the substance of the competing motions.

("BCaBAs"). *Id.* Registered behavioral technicians ("rBT") are primarily responsible for implementing ABA therapy services, under the supervision of a BCBA or BCaBA. *Id.* at 5. BCaBAs receive training similar to that of other medical and behavioral professionals, by which I mean they initially go to school and then begin working in a supervised clinical setting with clients, before ultimately obtaining certification from a state-licensed agency. *See id.*

Khiana Boone started working for Autism Home as a registered behavioral technician in May 2019. [DE 20 at 9.] Over the next couple years, she obtained training and education-related hours necessary to obtain her BCaBA certification. [DE 62-4, ¶ 5.] On July 29, 2021, Boone obtained her certification as a BCaBA. [DE 62-5.] Autism Home contends that while working as a rBT, Boone received many hours of indirect supervision under an existing BCBA, and Autism Home could not bill for this time Boone spent training on the job. [DE 62-4, ¶ 5.]

In August 2021, Boone entered a written agreement with Autism Home to become a BCaBA. [DE 1-1 at 1.] The agreement constituted "the entire understanding between the parties in respect of" Boone's employment for Autism Home and "supersede[d] all prior and contemporaneous understandings or agreements between the parties" with respect to her employment. *Id.* at 5. As an "at will" employee, Boone could be terminated "at any time, for any reason, with or without cause," and the parties "contemplate[d]" that Boone would provide Autism Home "with no less than

3

(30) thirty days notice before terminating her employment," should she wish to leave. *Id.* at 3.

Autism Home's claims are based on three provisions in the agreement, so bear with me as I walk through some boilerplate contract terms. First is section 6, which is a covenant not to compete with Autism Home. *Id.* at 4. This provision forms the basis for Count I of the complaint. [DE 1 at 8.] It states that during the term of the contract, and for six months after its termination, Boone "shall not, directly or indirectly own, operate, invest in, be employed by, or serve as a consultant or independent contractor to, any competitor of AHS within a fifteen (15) mile geographic radius of AHS's primary office." [DE 1-1 at 4.]

Next up is section 7 of the agreement, which is a non-solicitation provision. This section of the agreement forms the basis for Count II of the Complaint. [DE 1 at 10.] Pursuant to section 7, Boone agreed that for twelve months after the termination of the contract, she "shall not, directly or indirectly solicit any patient, employee, or independent contractor of AHS" or "induce any of the foregoing to terminate their relationship with AHS." [DE 1-1 at 4.] The terms further state that for the same period, Boone is prohibited from disclosing "the names or addresses of any of the customers or clients of AHS or any other information pertaining to them," or attempting to "take away" any Autism Home clients she became acquainted with during the term of her employment. *Id*.

4

Finally, there is section 9 of the employment agreement, which is a confidentiality provision. This is the section of the agreement that is addressed in Count III of the Complaint. [DE 1 at 11.] It states that during the term of the contract and "at any time thereafter" Boone is prohibited from "disclosing, copying or using any confidential information relating to AHS or its patients," including "any business or financial information not generally known to the public regarding the business and operations of AHS or its patients," unless such information otherwise becomes publicly available. [DE 1-1 at 4.]

After entering the agreement, Boone worked at Autism Home for a little under a year, through July 2022, when she resigned from her position. [*See* DE 20 at 3; DE 62-4, ¶ 7.] At the time she resigned, she was coordinating care for approximately twenty-five of Autism Home's clients and supervised care for a few others. [DE 20 at 10–11.] In August 2022, Boone took a new job with a company called The Piece That Fits. [DE 62-1 at 3; DE 20 at 13; *see* DE 1, ¶¶ 44, 56.] The Piece That Fits, as noted at the outset, is not currently in business. But at the time this suit was filed, it was based in Lansing, Illinois, approximately seven miles from Autism Home's main office, and provided competing ABA therapy services. [*See* DE 31 at 4; DE 62-4, ¶¶ 9–10.]

After learning that Boone had taken a job doing essentially the same work for an apparent competitor, Autism Home filed suit claiming that Boone breached the non-compete, non-solicitation, and confidentiality provisions in her employment agreement and stole its trade secrets to boot. Boone denies all of it. [*See* DE 20.] Noting that many

5

of its factual allegations are stated on "information and belief," after over a year of discovery, Boone challenged Autism Home to come forth with evidence substantiating its claims. [*See, e.g.*, DE 1, ¶¶ 37–43, 46, 74–75.] As discussed below, on the threadbare record presented, it is clear that the claims against Boone lack merit.

## Discussion

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment has been described as the time in a lawsuit to "put up or shut up." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The same standard applies where parties file cross motions for summary judgment. *Int'l Brotherhood of Electrical Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).

Both parties assume that Indiana law applies to this case, so I will follow suit. A breach of contract claim under Indiana law requires the plaintiff to show that there was a contract, which defendant breached, that the breach was a substantial factor contributing to the damages, and that the damages were foreseeable at the time the

contract was agreed to. *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021) ("The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages."); *Hopper v. Colonial Motel Properties, Inc.*, 762 N.E.2d 181, 188 (Ind. Ct. App. 2002) (noting that, in addition to proving existence of a contract, breach, and damages, a plaintiff must show that "the defendant's breach was a substantial factor contributing to the damages" and that damages were foreseeable "at the time of entering into the contract"). The parties do not discuss the elements of Autism Home's claim for misappropriation of trade secrets (and the complaint makes no mention of what basis in law the claim is brought under). For present purposes, it suffices to note that under both state and federal law, a party claiming misappropriation of trade secrets bears the burden to show "the existence of a trade secret and its misappropriation." 18 U.S.C. §§ 1836(b)(1), 1839; Ind. Code §§ 24-2-3-2, 24-2-3-3; *Chroma Cars, LLC v. Harris*, 2022 WL 1686530, at *3 (N.D. Ind. May 25, 2022).

Let's start with the trade secret claim. Autism Home asserts that in the course of her employment, Boone acquired information pertaining to Autism Home's "Client and Provider Information, Utilization Management and Competitive Cost Structure, [and] Processes and Policies," which Autism Home characterizes as "information that derives economic value from not being generally known" to the public and "that is the subject of reasonable efforts by AHS to maintain its secrecy." [DE 1, ¶ 93; *see id.*, ¶¶ 92–104.] But that's nothing more than a conclusion. In other words, it's what Autism Home *alleges*. Allegations are not facts, and when challenged to come forth with *evidence* supporting

7

its theory that Boone stole away its secret sauce, Autism Home has essentially conceded that the claim is baseless. There is simply no evidence in the record supporting an inference that any of this information constitutes a trade secret. If there is, Autism Home fails to identify any in its briefing. [*See* DE 63.] Thus, Boone is entitled to judgment on the trade secret claim.

Autism Home further claims that Boone breached the confidentiality and non-solicitation provisions in her employment contract by sharing the foregoing information with The Piece That Fits and soliciting away Autism Home's employees and clients. But, again, there is simply no evidence supporting these claims. Boone has submitted copies of interrogatories served on Autism Home requiring the company to specify facts or evidence supporting its pertinent allegations. [DE 55-1; DE 55-2.] Autism Home initially responded that it believed Boone "took with her resources and materials developed by and for AHS to her new employer." [DE 55-1 at 4–6.] Autism Home later supplemented its answers to these interrogatories to state that it had "not discovered evidence that Boone did in fact take and disclose such information." [DE 55-2 at 2–5.] Autism Home also responded that it believed Boone had solicited other employees, including Felicity Pina, and that she had taken "resources and manuals" developed by Autism Home to The Piece That Fits. [DE 55-1 at 3–4, 7.] But Autism Home never produced any evidence supporting these beliefs or substantiating the view that Boone solicited Ms. Pina to work for The Piece That Fits, and none is cited in its summary judgment briefing. [*See* DE 63.]

In sum, because Autism Home has presented no admissible evidence supporting these claims, and Boone flatly denies the allegations [DE 20 at 18–19], I conclude there is no triable dispute on the claims of breach of the confidentiality and non-solicitation provisions in her employment contract. Summary judgment is therefore appropriate on those claims.

That leaves Autism Home's claim that Boone breached her covenant not to compete. These provisions are not favored under the law because they restrain trade. *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 211 (Ind. Ct. App. 1982) (describing covenants not to compete as "step-children of the law"). *See also Cent. Indiana Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728–29 (Ind. 2008) (noting Indiana has "long held that noncompetition covenants in employment contracts are in restraint of trade and disfavored by the law"). Non-compete agreements "must be reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest." *Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 91–92 (Ind. Ct. App. 2001) (citing *Burk v. Heritage Food Serv. Equip.*, 737 N.E.2d 803 (Ind. Ct. App. 2000)). The determination of reasonableness is a question of law. *Krueger*, 882 N.E.2d. at 729. In sum, courts will enforce non-compete agreements under certain conditions, which require an employer to show: (1) the restraint is reasonably necessary to protect its business; (2) it is not unreasonably restrictive of the employee; and (3) it is not antagonistic to the general public. *McGlothen v. Heritage Env't Servs., L.L.C.*, 705 N.E.2d 1069, 1071–72 (Ind. Ct. App. 1999) (citing *Slisz v. Munzenreider Corp.*, 411 N.E.2d 700, 704 (Ind. Ct. App. 1980)).

In determining the reasonableness of a covenant not to compete under the foregoing standard, I must first examine whether Autism Home has "asserted a legitimate interest that a covenant may protect," before considering whether the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited. *Custom Truck One Source, Inc. v. Norris*, 2022 WL 594142, at *5 (N.D. Ind. Feb. 28, 2022) (citing *Krueger*, 882 N.E.2d at 728–29; *Titus*, 758 N.E.2d at 92). To have a legitimate interest in enforcing the non-compete provision, Autism Home must "demonstrate some special facts giving [Boone] a unique competitive advantage or ability to harm" its business. *McGlothen*, 705 N.E.2d at 1071–72. *See also Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 913 (Ind. Ct. App. 2011) ("To demonstrate a legitimate protectable interest, an employer must show some reason why it would be unfair to allow the employee to compete with the former employer."). These "special facts" include things like "trade secrets known by the employee, the employee's unique services, confidential information such as customer lists known to the employee, or the existence of a confidential relationship." *McGlothen*, 705 N.E.2d at 1072. However, Autism Home is not entitled to protection from "an employee's knowledge, skill, or general information acquired through experience or instruction while in the employment." *Id.* (citing *Century Personnel, Inc. v. Brummett*, 499 N.E.2d 1160, 1163 (Ind. Ct. App. 1986)).

Rather than make the case that it has a legitimate interest under the foregoing authorities, Autism Home baldly asserts that it is entitled to judgment on the claim

10

because Boone took a job with another provider of ABA therapy located within a fifteen mile radius of its main office. [*See* DE 63 at 4–5.] But without demonstrating "special facts" that give Boone a "unique competitive advantage" in the marketplace, Autism Home fails to meet its burden to show the provision at issue is reasonable and therefore enforceable. As outlined above, Autism Home has conceded that it has no evidence that Boone obtained any "special facts" Boone acquired in the course of her employment as a BCaBA.

Autism Home attempts to save the claim by pointing to "the 800 hours of non-billable training and supervision" it furnished to Boone while she worked as a rBT. [DE 63 at 2.] Even ignoring the fact that this training and supervision was provided to Boone *before she even entered the employment agreement at issue*, and that this alleged consideration is nowhere mentioned on the face of her employment agreement, this type of "training and supervision" is plainly insufficient under the foregoing standard articulated by Indiana courts. *McGlothen*, 705 N.E.2d at 1072. *See also Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556, 561 (Ind. 1983) ("[T]he potential use by a former employee of acquired knowledge, skill and information (except trade secrets and confidential information) will not justify a restraint."); *Brunner v. Hand Indus., Inc.*, 603 N.E.2d 157, 160 (Ind. Ct. App. 1992) (reiterating that employers have no protectable interest in the "general knowledge, information or skills gained by the employee in the course of his employment"). In sum, there is no triable dispute that the non-competition provision in

11

Boone's contract is unreasonable and therefore unenforceable, so she is entitled to judgment on this claim, as well.

## Sanctions

Boone has coupled her motion for summary judgment with a request for an award of costs and reasonable attorney's fees incurred in defending Autism Home's claims pursuant to the Court's inherent powers and Indiana's general recovery rule, Ind. Code § 34-52-1-1(b). [DE 56 at 4–5.] The thrust of this argument is that Autism Home has acted in bad faith by refusing to voluntarily dismiss its claims while acknowledging that it cannot succeed on their merits. *Id.* at 4. Given the financial asymmetry between the parties, Boone suggests this is a matter of gamesmanship designed to punish her for leaving the company. *Id.*

Autism Home responds that it has engaged in good faith throughout the litigation. There is some evidence that Boone was not transparent about her reasons for resigning, telling a company executive that she wanted to be "more entrepreneurial and focus on her baking business, her car rental business, and stock investing," and then promptly started working for The Piece That Fits. [DE 63 at 6; *see* DE 55-1 at 2–3.] An employer in Autism Home's shoes would reasonably be left wondering whether there was more at play – and a failure to take prompt action could conceivably have resulted in harm to its business.

In the course of discovery, Autism Home received sworn statements from Boone and The Piece That Fits that Boone had not disclosed any confidential or trade secret

12

information to The Piece That Fits and that The Piece That Fits was not aware that Boone had a non-competition covenant in her employment agreement. After receiving this information, Autism Home determined it could only proceed on its claim against Boone for breach of the non-compete provision. [DE 63 at 6.] In addition, The Piece That Fits has asserted a counterclaim seeking $220,000 in damages against Autism Home. [*See* DE 31 at 18–20.] The Piece That Fits evidently took a while to provide Autism Home responses to its discovery requests. [DE 63 at 7.] Since the close of discovery, it appears the parties have attempted to negotiate a settlement and release, albeit unsuccessfully, as Boone and Autism Home disputed whether Autism Home could prevail on its claim for breach of Boone's non-compete, and The Piece That Fits (which, again, is no longer in business) failed to engage in settlement negotiations altogether.

All in all, it seems to me that Autism Home had a valid basis to file this lawsuit but it simply fell short on the facts. The record before me does not suggest the sort of intentional bad faith conduct warranting fee-shifting as a sanction.

**ACCORDINGLY:**

Defendant Khiana Boone's motion for summary judgment [DE 54] is **GRANTED**, and Plaintiff Autism Home Services, LLC's cross motion for summary judgment [DE 61] is **DENIED**. The Clerk is **DIRECTED** to enter judgment for Boone and against Autism Home on Autism Home's claims for breach of Boone's written employment contract (Counts I–III) and misappropriation of trade secrets (Count IV). Count V of this action remains pending against Defendant The Piece That Fits. Autism

Home is **ORDERED** to notify the Court and The Piece That Fits within fourteen days of its intention to move forward on Count V.

    **SO ORDERED**.

    ENTERED: June 20, 2024.

                                      /s/ Philip P. Simon  
                                      PHILIP P. SIMON, JUDGE  
                                      UNITED STATES DISTRICT COURT